IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-466

Filed 07 March 2023

Davidson County, No. 21 CVS 1701

RYAN AND AMANDA POPE, Petitioners,

v.

DAVIDSON COUNTY, Respondent.

Appeal by intervenors from order entered 20 January 2022 by Judge Susan E. Bray in Davidson County Superior Court. Heard in the Court of Appeals 25 January 2023.

*Bondurant Law, PLLC, by Joel M. Bondurant, Jr., for Petitioner-Appellees.*

*Office of the Davidson County Attorney, by Assistant County Attorney James Andrew Howe, for Respondent.*

*Freedman Thompson Witt Ceberio & Byrd PLLC, by Christopher M. Watford, for Intervenors-Appellants.*

ARROWOOD, Judge.

Timothy Miller and Lyle Loflin (collectively, "intervenors"), appeal from the trial court's order granting Ryan and Amanda Pope (collectively, "petitioners") the issuance of a special use permit for the construction of a motocross training center. For the reasons stated herein, we affirm the trial court's order.

I.      Background

On 19 April 2021, petitioners applied for a special use permit from the Davidson County Board of Adjustment (the "Board") requesting authorization to use

their 143.46-acre parcel of property to operate a "Recreational Facility, Commercial Outdoor, in a RA-2 Rural Agricultural District."  Petitioners planned on using the land to operate a motocross training center.

Prior to considering the application, the Board conducted a "quasi-judicial public evidentiary hearing in accordance with the procedures" set forth in Article VII of the Davidson County Zoning Ordinance ("the ordinance").  The hearing was held on 20 May 2021.

The ordinance states that in order for a special use permit to be granted, four standards must be established with respect to the proposed use:

1) The use will maintain the public health, safety and general welfare, if located where proposed and developed and operated according to the plan as submitted;

2) The use is listed as a Special Use in the district in which it is proposed to be located, and complies with the regulations and standards of this Ordinance including the Dimensional regulations (Article IV), as well as those contained in the individual standards for that special use;

3) The use will maintain or enhance the value of contiguous property, or that the use is a public necessity;

4) The use is in compliance with the general plans for the physical development of the county as embodied in these regulations.

Prior to the hearing, the Board was misinformed as to the correct voting threshold required in order to issue a special use permit.  The Board believed that in

order to grant a special use permit a super-majority vote (4/5) on each standard was required. However, a change in the ordinance, which came into effect in January 2021, allowed for a special use permit to be awarded after a simple majority vote on each standard.

Individuals present at the May hearing included Senior Assistant County Attorney Mike Newby ("Mr. Newby"), county zoning officials and administrators, intervenors, and other members of the community. Due to the rural nature of the area in question, intervenors were concerned about "the noise, lighting, and dust" operating a motocross facility would create. Timothy Miller stated that because the facility would operate in a valley, he was concerned about the noise funneling toward his property. Lyle Loflin stated that he was concerned with barriers and individuals using the facility trespassing onto his property.

At the conclusion of the hearing, the Board voted 4-1 with respect to standards one and two. Standard three received a 3-2 vote, and standard four was satisfied by a 5-0 vote. The chairman of the Board, referring to standard three, then declared "that one of the standards failed and it is the Board's obligation to deny the request." Thereafter, members of the Board motioned to "table the application" and reconsider the standards and additional evidence at the next Board meeting held on 17 June 2021.

At the beginning of the Board meeting held in June, Mr. Newby noted that the May hearing was "conduct[ed] . . . under a false premise." "Based on inaccurate

information, the Board voted under the assumption that the votes should be 4/5 majority votes." The Board then voted, 5-0, to rescind the prior votes and reopen the hearing on the application. All evidence from the previous hearing was still applicable and witnesses did not need to provide new testimony unless they had new or additional evidence to present.

At the conclusion of the July hearing, the Board voted and found that three standards failed. Thus, the special use permit was denied.

Pursuant to N.C. Gen. Stat. § 160D-1402, petitioners filed a petition for *writ of certiorari* ("PWC") on 6 August 2021 seeking judicial review of the Board's decision to deny their special use permit. Petitioners alleged that "the decision to deny the application in May and table [p]etitioners' application until June was the result of a legal error[,]" and thus petitioners' application for a special use permit should have been granted at the May hearing. A hearing on the PWC was held on 10 January 2022, Judge Bray presiding.

At the beginning of the hearing, Mr. Newby conceded that the Board incorrectly concluded that one of the standards didn't pass at the May hearing. Joel Bondurant, Jr. ("Mr. Bondurant"), attorney for petitioners, argued "[t]here's no process in the statutes for a board, once having taken all the evidence and vot[ing] in favor of a special use permit, to then reopen the proceedings and take more evidence and then deny the permit." Thus, the crux of petitioners' argument was that once the vote was conducted in May and each standard received a passing vote, the Board no

longer had the authority to reopen the application and conduct an additional vote at the June hearing.

However, it was the county's position that petitioners were not entitled to relief as "no final action was taken [at the May hearing], and every deliberative body can change its mind prior to making its decision formally." Mr. Newby argued that "the county has the right to establish rules of procedure for its Board of Adjustment." Mr. Newby stated the county's rules of procedure stem from "two sources; one is the Roberts' [sic] Rules of Order[]" and a presentation entitled "Suggested Rules of Procedure for Small Local Government Boards[,]" from the UNC School of Government.

Judge Bray was given a copy of Robert's Rules of Order by E. Drew Nelson ("Mr. Nelson"), intervenors' counsel, and declared that the Board's decision to table the application until the June meeting was improper procedure. Judge Bray found that based on Robert's Rules of Order, "a lay-on-the-table motion" cannot be used "to kill the motion or to put it off until the next meeting[,]" which is what the Board did at the conclusion of the May hearing. After receiving testimony with respect to the Board's requirement to issue the special use permit once the standards set forth in the ordinance were satisfied, Judge Bray granted petitioners' PWC directing the Board to issue the special use permit.

Judge Bray's order was entered on 20 January 2022. Judge Bray concluded that "the denial of the application and the manner in which it was handled was based

upon a plain and acknowledged error of law." Intervenors appealed the trial court's order on 21 February 2022.

## II.     Discussion

On appeal, intervenors contend the trial court erred by: (1) concluding that the Board used an improper procedure by voting to table the special use application until the following June Board meeting; (2) not concluding that petitioners waived their right to contest the decision of the June Board due to their own participation in the hearing; and (3) denying intervenors the opportunity to be heard at the hearing on the PWC. We address each argument in turn.

### A.     Improper Board Procedure

As to the first issue, intervenors assert it was error for the trial court to conclude the Board acted improperly pursuant to the procedures set forth in Robert's Rules of Order. They argue, "the trial court made an assumption, against all evidence, that Robert's Rules of Order governed the proceedings." As illustrated above, this is not an accurate depiction of what occurred at the PWC hearing. It was Mr. Newby who argued that the procedural rules of the Board were established using Robert's Rules of Order. It was only after Judge Bray read and analyzed the copy of Robert's Rules of Order given to her by Mr. Nelson that she found the motion to table the application until the June hearing was error. Counsel " 'may not base an appeal on an alleged error that she invited.' " *Dillingham v. Ramsey*, 267 N.C. App. 378, 380, 837 S.E.2d 129, 132 (2019) (citation omitted). Moreover, the trial court's finding

that the Board's decision to table the application until the following Board meeting was improper procedure is not the core issue before this Court. Instead, it is the fact that the Board held a vote on the special use permit at the May hearing which should have resulted in the permit being granted, eradicating the necessity for a second Board meeting. To be clear, Robert's Rules of Order have no connection to the central issue on appeal, which is the fact that the Board acted pursuant to a misapplication of their own zoning ordinance in denying petitioners' application at the May hearing. Intervenors' first argument is overruled.

## B.    Waiver and Consent to Board Process

Intervenors' second argument is likewise without merit. Despite the statutory scheme provided by our General Statutes, intervenors contend that petitioners "waived their right" to file for a PWC by "consenting to the process used by [the Board][.]" Intervenors assert that petitioners are "presumptively charged with knowledge of [the ordinance] and the requirements to obtain a special use permit[,]" thus, by being unaware of the correct voting standards and participating in the June Board meeting, they waived their right to challenge the Board's June decision to deny the special use permit. Intervenors concede that there is no case law to support their assertion and attempt to draw parallels to criminal law and contract disputes to bolster their argument that petitioners waived a statutory right. We reject this argument that is unsupported by any applicable legal authority.

## C.    Opportunity to be Heard

With respect to the third argument on appeal, intervenors allege they were denied their "due process right to a meaningful opportunity to be heard at a meaningful time and in a meaningful manner[,]" despite the fact that their counsel was present at the PWC hearing. Intervenors concede that they "did not otherwise object to this failure at the time of the hearing[,]" but assert their issue is preserved for appellate review due to the trial court's failure "to protect the intervenors' due process rights[.]" We disagree.

Our review of the record does not support any determination that intervenors' counsel sought to participate in the PWC hearing but was prevented from doing so. Thus, we find no support for this contention in the record. Because intervenors did not seek to participate in the trial court, appellate review of this issue is barred. N.C.R. App. P. 10(a)(1) (2022); *State v. Valentine*, 357 N.C. 512, 525, 591 S.E.2d 846, 857 (2003) ("The failure to raise a constitutional issue before the trial court bars appellate review."); *See also State v. Wiley*, 355 N.C. 592, 615, 565 S.E.2d 22, 39 (2002) ("It is well settled that an error, even one of constitutional magnitude, that defendant does not bring to the trial court's attention is waived and will not be considered on appeal."), *cert. denied*, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003).

### D.     N.C. Gen. Stat. § 160D-1402

The dispositive issue on appeal is whether it was error for the trial court to grant petitioners' PWC directing the Board to issue a special use permit. We conclude that it was not.

A special use permit "is one issued for a use which the ordinance expressly permits in a designated zone upon proof that certain facts and conditions detailed in the ordinance exist." *PHG Asheville, LLC v. City of Asheville*, 374 N.C. 133, 148, 839 S.E.2d 755, 765 (2020) (internal quotation marks omitted) (quoting *Humble Oil & Refin. Co. v. Bd. of Aldermen*, 284 N.C. 458, 467, 202 S.E.2d 129, 135).

"According to well-established North Carolina law, the local governing board 'must follow a two-step decision-making process in granting or denying an application for a [special] use permit.'" *PHG Asheville, LLC*, 374 N.C. at 149, 839 S.E.2d at 765 (citation omitted). Preliminarily, the local board "must determine whether 'an applicant has produced competent, material, and substantial evidence *tending to establish* the existence of the facts and conditions which the ordinance requires for the issuance of a [special] use permit.'" *Id.* at 149, 839 S.E.2d at 765-66 (emphasis in original) (citation omitted). Where an applicant has satisfied this initial burden, then *prima facie* he is entitled to the issuance of the requested permit. *Id.* at 149, 839 S.E.2d at 766 (quotation marks and citation omitted). Accordingly, "an applicant for a special use permit who has met its burden of *production* automatically wins if no contrary evidence is offered." *Dismas Charities, Inc. v. City of Fayetteville*, 282 N.C. App. 29, 31, 870 S.E.2d 144, 146 (2022) (emphasis in original).

The trial court, when reviewing a decision of a county board of adjustment, is responsible for:

> (1) Reviewing the record for errors of law,

(2) [E]nsuring that procedures specified by law in both statutes and ordinances are followed,

(3) [E]nsuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) [E]nsuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) [E]nsuring that decisions are not arbitrary or capricious.

*JWL Invs., Inc. v. Guilford Cnty. Bd. of Adjustment*, 133 N.C. App. 426, 428-29, 515 S.E.2d 715, 717 (citations omitted), *disc. rev. denied*, 351 N.C. 357, 540 S.E.2d 349 (1999). "If a petitioner contends the Board's decision was based on an error of law, 'de novo' review is proper." *Id.* at 429, 515 S.E.2d at 717 (citation omitted).

On appeal, it is this Court's role "to review the trial court's order for errors of law." *Id.* at 429, 515 S.E.2d 717-18 (citation omitted). " 'Th[is] process has been described as a two-fold task:  (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' " *Id.* at 429, 515 S.E.2d at 718 (citations omitted).

In pertinent part, N.C. Gen. Stat. § 160D-1402(b) (2022) states "[a]n appeal in the nature of certiorari shall be initiated by filing a petition for writ of certiorari with the superior court."  The statute further provides, "[f]ollowing its review of the decision-making board . . . the [superior] court may affirm the decision, reverse the

decision and remand the case with appropriate instructions, or remand the case for further proceedings." N.C. Gen. Stat. § 160D-1402(k). "If the court concludes that a permit was wrongfully denied . . . based on an error of law, the court *shall* remand with instructions that the permit be issued[.]" *Id.* § 160D-1402(k)(3)(a) (emphasis added).

The record before us reflects that the trial court properly concluded:

> the decision to deny the application in May and table [p]etitioners' application until June was the result of a legal error. But for the Board's legal error in interpreting and applying its zoning ordinance, the [p]etitioners' application would have been granted as a result of the May 20 hearing, as each standard obtained a majority vote at that time.

Thus, upon reading the record from the May meeting and interpreting the ordinance, the trial court found the denial of the special use permit was an error of law. The county conceded this error at the PWC hearing and the trial court entered its order appropriately.

Accordingly, the trial court acted properly pursuant to its authority under N.C. Gen. Stat. § 160D-1402 to order the Board to issue the special use permit as petitioners had previously received a passing vote on their application at the May hearing. *Dismas Charities, Inc.*, 282 N.C. App. at 35, 870 S.E.2d at 148 (directing the city council to issue the special use permit upon petitioners meeting their "burden of production"); *See also MCC Outdoor, LLC v. Town of Franklinton Bd. of Comm'rs*, 169 N.C. App. 809, 811, 610 S.E.2d 794, 796 (citation omitted) ("[W]hen an applicant

produces evidence which demonstrates it has complied with the ordinance, the petitioner is entitled to have the permit issued unless substantial competent evidence is introduced to support its denial."), *disc. rev. denied and appeal dismissed*, 359 N.C. 634, 616 S.E.2d 540 (2005).  The arguments to the contrary are overruled.

### III.    Conclusion

The trial court properly determined the issues before it, therefore the judgment appealed from must be affirmed.

AFFIRMED.

Judges COLLINS and WOOD concur.